If it pleases the court, we are back, and at least as to the state issues, we are back in pretty much the same procedural posture as we were when we argued before you in, I think it was the summer of 2004. We still contend that the actions of the school administrators and school board violated the state constitutional rights of Mr. Frederick, and the school board has made it clear that if the same events were to occur again, they would respond in the same way. Help me a little on some of the mootness issues. Yes. I can't recall exactly what the words were in the declarations. I know the principal, Morse, said that she destroyed the electronic records. I can't remember whether there's any testimony one way or the other saying whether there are any paper records. Were there any? My recollection is that in the discovery process, we saw paper records, but that's just my recollection, which is... So we can't tell from the record if there are paper records. We really can't tell from the record. Now, the next thing I want to know about the records is suppose the school gets an inquiry. Was Frederick disciplined or not? I can't tell whether they're going to say he has not been disciplined, we have no record of discipline, we are unable to answer your inquiry because all records have been destroyed from that period, or whether they're going to say he was disciplined but it was expunged or any discipline has been expunged. Has there been any kind of commitment that we have on the record for what they're going to say? No, sir. There is no such commitment. As a practical matter, it would be hard not to know that he had been disciplined. The whole world knows. Exactly. It's true. It's a bell that cannot be unrung at this point. Let me ask you about something else affecting mootness. I would assume that costs and attorney's fees are hanging out there for when this is all over. That is correct. Does that bear on mootness? I believe it does in the sense that at this stage in all of the proceedings on all of the issues, that is a practical factor in what happens in the end. To me, if I might, Your Honor, as to the mootness arguments, the arguments that there is no relief yet remaining, the number one form of relief that we believe is still remaining is a declaratory relief, that is to say a judgment that either the- That's your Eusterty argument? That is part of it, that we can do it, but basically the argument that the school board's past and proposed future actions are in violation of the state constitution, and we presume that injunctive relief would follow from that, but declaratory relief by itself is the big form of relief that we are after. Counsel, I want to follow up on just the evidentiary record aspect of Judge Kleinfeld's question. We don't have a declaration from the school principal, Morse, and, in fact, we don't know, based on this record, what the school actually has. What we have in front of us is a declaration from the superintendent who said all the records that were unfiled with the district, which I assume is the school district, were expunged or electronically destroyed. What do we know about what records may exist at the school itself? The actions where the records were actually generated were, at the beginning, in the high school itself, in the high school principal's office, and we don't know, actually, what has become of those. We've never been privy to it, and the declaration of the superintendent was not sufficiently detailed that it would tell us. No, the superintendent sort of elides the issue. The superintendent doesn't tell us at all what Principal Morse may have written down about the incident, about whether or not he got an additional 5-day suspension based on his comment or his quote of Thomas Jefferson. Correct. That is correct. There are a lot of unknowns here on what remains and will remain. So what is the state of discovery? I gather this came up to us on summary judgment the last time? It did. Based on qualified immunity, though. Right. And one of the very frustrating things to us about the posture of the case is that there has never been any factual evidentiary hearing at all. So nothing is on record except the deposition testimony and some affidavits that were submitted with cross motions for summary judgment. So there is a lot more discovery that still ought to be done to resolve some of the basic issues as to what the young man did, why he did it, what the school's response was, and the Jefferson quote, among other things. What is your contention that the First Amendment aspect of the Alaska State Constitution is broader than how the Supreme Court has recently interpreted the First Amendment in the U.S. Constitution? Yes, Your Honor. It's not only broader, but the method of analysis is considerably different. The key case here is Brees v. Smith, which was a hair-length case actually out of Fairbanks in 1972, and in that case the court said because privacy is a constitutional right and the right to public education is actually explicit in the state constitution, that a fundamental right cannot be impinged on by the school district without the district showing a compelling need. Of course, that's very different from anything in the federal free speech area. So we think there is great hope that the state courts will see it considerably differently. They expressly said in that case that they were not going to decide it under the U.S. Constitution and that they were going to decide it under the Alaska Constitution, which they could interpret differently even if the words were the same. Is that correct? That is correct, Your Honor. Our state Supreme Court, I won't say frequently, but not infrequently goes that route. The part of the school board's mootness arguments that I think needs to be touched on here most is the notion that this is not a case coming in within the doctrine of capable of repetition without being effectively reviewed. We are now coming up on seven years since the original incident. The high school senior now wasn't even in junior high then. The board's argument, I believe, comes down to an argument that as a practical matter, the courts can never effectively review school discipline because the student will have long since graduated. What could we do? Leaving out Eusterche, leaving out capable of repetition to others, what could we do for Frederick? At this point, I believe the most direct as to the state issues. Suppose you were to win. Right. And we were to tell the district court to do something in accord with whatever your victory was. What would we tell it to say in a declaratory judgment and to order in an injunction? You would tell the district court to include in an injunction that a student may not be punished, from or punished for an expression that is not a foul of one of the traditional types of restrictions on free speech, like a disruptive statement or an obscene statement. If the statement, A, is plausibly concerned with a social or political issue, or if there is no compelling need demonstrated by the school district to prohibit or punish that expression. And there I'm combining both what we're urging on you under the post-Supreme Court federal standard. If you were to win, is there anything that we could tell the district court to tell the school board about Frederick, anything to do with his records or anything like that? Yes. They could be ordered to include in his records a statement that the courts have ruled and that it would be precisely what the ruling are. That would neaten it up. It would mean that anyone who actually inquired as to what happened would know that he made an expression, he was punished, and the courts overruled it because that was inconsistent with either the federal or state constitution. I think doing that kind of positive statement... So getting an answer from the school, we have no records regarding Frederick because they've been destroyed electronically, would not satisfy what you think Frederick is entitled to? No. Although, to be quite frank with the court, clearly as time passes the need to do something about those old records becomes more and more attenuated, but the need is still there. It never disappears entirely. Therefore, I believe that that kind of positive statement... A little dredged up if he ever runs for judgeship. Yes. Yes. Or almost anything else. Or vice president. Yes. Don't rule that out. Mr. Frederick wants to present to a court facts, evidence, that his constitutional rights were violated by an overzealous school administrator and school board, and that his course of conduct was constitutional, and we think probably the most direct way to get there would be by certifying this question to the state supreme court, although if the court chose to keep it in the federal trial court, that of course would be acceptable as well, although the federal trial court would essentially only be doing an educated guess as to what the state supreme court would do. As would we. Yes. I mean, there's not really an established law under the last... Right. And that case was in 72. The personnel on the state supreme court have all changed since then. We, of course, hope and expect that the president would be observed by the current members, but it is a little bit of educated guesswork by anyone except themselves. You have two great cases for your side of it. One is Breese, which says that the right to liberty to express himself by his hair length can only be interfered with by a compelling state interest, and there is none. And it applies Roberts and says the Alaska Constitution is a whole different ballgame from the federal Constitution, and it's more libertarian. And then you have Raven, which pretty much does the same thing with the Alaska Constitution and says that there's a right of adults to possess marijuana for personal use, not medical or anything, just for their own pleasure. Right. But they're both in the 70s. What has happened since in Alaska authority, either in the Court of Appeals or the Supreme Court, that would help us tell whether the Supreme Court would say, yep, we said it and we meant it and that's precedent and that's it? I have to tell the Court I have not found anything that would give us any kind of a solid clue, one way or the other, about what they would do. Maybe it's just so clear that no cases have arisen. That may well be. I think the prosecutors have avoided bringing possession of marijuana cases so that they wouldn't find out, haven't they? Well, in fact, they have brought it. I think Bill Satterthwaite locks them into one. Yes. And then the Court of Appeals said Raven is the law. Yes, exactly. If the Court will let me, I'd like to reserve a minute and a half of time for rebuttal. If you have other things you need to bring up, this case has gone to the Supreme Court. It's a really important case. If you have another minute or two, just go ahead and we'll still let you give a little rebuttal. I'm content to do that. Okay. Counsel? Good afternoon. I'm David Crosby, representing former Principal Debra Morse and the Juneau School Board. I'd like to address first the ---- When you say former principal, is she retired? I beg your pardon? You say former principal? That's correct. She is no longer employed in that position. She still works for the school district, but she is now a building administrator. Counsel, I need some help from you, too, on mootness. There's a case that we have, well, there are a bunch of them, about school discipline or school decisions and mootness. One of them that seemed kind of close to me is DiLoretto v. Downey Unified School District. Which one? It seemed really moot, except we said it wasn't under W.T. Grant. That was the one where people put advertisements on bulletin boards around the baseball field or the fence around the baseball field, and then somebody wanted to put up the Ten Commandments. The school district said no, and they sued. And then the school district said no one can put up anything on a fence around the baseball field, so it's moot. And we said no, it's not moot under United States v. W.T. Grant because voluntary cessation of allegedly illegal conduct does not make the case moot. Could you address DiLoretto? The first question I would ask, Your Honor, was that a facial challenge? I don't remember. Are you familiar with the case? I assume you know more about it than I do. Yeah, I know. Actually, that case hasn't been cited in this connection. But, I mean, the question is, could it recur with respect to this particular individual? This is an as-applied case. It is not a facial challenge. So, you know, it can never happen to this individual again. Why couldn't it? I was thinking right now, of course, they want the case to be moot, but they've never given any promise about the future, and they won in the Supreme Court. The school district won the case. I would think that when it's all over, it might be very satisfying for the Juneau School Board and the superintendent of schools and retired Principal Morris to put a big black-bordered notice in Frederick's file saying this kid was disciplined for advocating drug use. Well, let's talk for a minute about the records. Is there anything to stop them from doing that? Well, yes, there is. Why? Because they cannot release any records, any student records, without the consent of the student. So that's the very first question that comes in. But if they're in the file, and we've seen this over and over, even though there's laws that say that the records cannot be turned over without the consent of the subject of the records, they're leaked all the time. It's happened at UCLA Medical Center. I mean, if they exist, if they exist. So the point is, one, the declaration of Peggy Crow doesn't speak to whether there's any such records at the high school. So for all we know, there might be some. And, two, could they be used to harm Frederick sometime in the future? The second point was what, Sharma? I'm sorry, I'm hard of hearing. I'm sorry, and I'm soft-spoken. So two is, could someone, without authority, but if the record exists, use it to harm Frederick in the future? Yeah. I mean, let me say, I did not, when we were putting together this declaration, it never occurred to me that you would distinguish between high school records and district records. They're only the district records. They are kept in a computerized system that they call the SASE system. How can we tell that? Does the record show that? You know, the record says that they are not available through the district, and the district encompasses everyone in the district. They are all subject to the discipline of the superintendent, who is the employer. She is the person who is responsible for all that. They don't have a basement full of files at the school? I beg your pardon? They don't have a basement full of files at the school? No, they don't, in fact. Does the record show that? The record doesn't show that. What the record says is that she went through, she asked for every record that was available on Joe Frederick. Electronic records, she reviewed. I'm sorry, she said she reviewed the electronic records. No. It says, I examined the educational records. Now, I'm on page five of the excerpt of records. It says educational records on file with the district. It doesn't say anything about the high school. The high school is part of the district. When the superintendent speaks, she speaks on behalf of everyone within the district. If I had gone to the principal, why not go to the teachers? Why not go to the custodian? You know, without anything being in the record on this, it's hard for me to imagine because the only thing I have to compare with it would be L.A. Unified School District or Pasadena School District. And I can tell you that not every record that's at each school in those districts is also at the district level. And there's nothing in the record that tells me that your school district is different. Muteness is a jurisdictional question. It's a very serious question for the federal courts to proceed. Yes, you don't need to tell us that. We know that. A supplemental affidavit could easily be filed. Well, you can't file evidentiary materials at the appellate level. I suppose we can go back down to the district court and clarify that and make sure that we've covered all the bases. I believe that Superintendent Cowan's affidavit covers all of the records. She says she asked for the educational records of Joseph Frederick. She looked in his cumulative file, which contains grades, test scores, doesn't contain any disciplinary records. Looked at his transcript. His transcript makes no reference to it. And then she looked at the computerized files. And in the computerized files, she found two references to discipline. She ordered those removed from the computer and any printout copies shredded. And now when a request comes in, it's going to come in to some clerk who's going to – first thing they're going to ask is, does the student agree to release this information? If the student doesn't agree to release the information, there is nothing further the district can do. The response is – Wait a minute. The question really isn't about the student release. Often if you apply for a job or you apply for various sorts of benefits or care, a condition of your application is that you sign a release. So although they can't be released unless the student releases them, he's likely to have to release them from time to time. I suppose. In fact, when the requests come in, they come in for transcripts. Well, like medical records are secret, but every personal injury case you get a bunch of releases from the plaintiff so you can get a medical record. I suppose. And that's, you know, obviously that's a question Mr. Frederick would have to ask himself at the time. No, that's not a satisfactory response to the question of mootness. The question of mootness is not can anyone see the records if Frederick doesn't let them. The question for mootness is are there any records there? And I believe, Your Honor, that Superintendent Collins' affidavit addresses that question squarely. She says on excerpt of records. I looked at it here, and I'm not sure whether it does or not. It says that she looked in the district records. It doesn't say anything about whether school records exist. And it says that the discipline was on page five of the incident report. And then it says she directed that references in the district's database to the discipline be expunged, and then she checked and saw that it was expunged in the database. She directed that all printouts be shredded. There's no verification that there's nothing in print. That's paragraph six. I don't see anything more. Am I missing something? Your Honor, all I can say is she says that she pulled the files. She looked at his transcript. She looked at his cumulative record. She found nothing. No, no, no. She says on page five of seven she found the incident report noting that he got a 10-day suspension. That's what she says. Paragraph 3B. That's correct. These are maintained in the electronic database. And so the only way you would get a record off of that is if there was a printout of that electronic database. And she says that she ordered all printouts of that electronic database to be shredded. Was the hard drive destroyed? I beg your pardon? Was the hard drive destroyed? You know you can retrieve the records on a computer. I don't know what she means by expunged because if they press the double delete button, that doesn't even get rid of it. You know, it seems that we're getting awfully far afield on this. No, we're addressing mootness, sir. We're addressing mootness. Would it be possible for someone, if this Court entered an order saying to expunge those records, it would still be possible for a computer expert to get into the district's computers and find something? At least I assume they would. What do they even need to get into the computer for? Why couldn't they just ask Morse? Was Frederick disciplined? And if she told the truth, she'd say yes. And what's more, the Supreme Court of the United States said we did not violate the Constitution in doing so. Well, again, she would be violating the law if she said a word to anybody about his records without a release. Let's assume he signed a release because he'd applied to get into the Army or something. You know, if this argument works as a way around mootness, there will never be a case such as Cole or Doak. It can't defeat mootness. You're saying that let's suppose a hypothetical case, not this case. Right. There's a defamatory false record. The creator and keeper of the defamatory false harmful record promises not to disclose it unless the person who is the subject of the record signs a release. You're saying that would moot out the case. I'm not saying that the mere fact that this law exists moots the case. I'm saying that her affidavit, her declaration stating that everything she could lay her hands on has been destroyed or shredded or removed from computers. And I'm saying that there is an additional level. She didn't say it was shredded. She said she ordered it shredded. She didn't say anything was shredded. She said she ordered it shredded. Yes. And she runs the district. She is the employer of everybody in the district. And when she makes an order, I assume that it will be obeyed. And when there's a law that says thou shalt not disclose information about student records without the permission of the student, I assume that that will be waived. How come the district hasn't just settled on a stipulation that they will report to anyone who, having obtained a release, asks that Frederick has not been disciplined by the district? Because that would not be true. So if he released it, they'd have to report that he was disciplined by the district. If the question is asked and a release has been obtained, and it is not a request for records, it is a request for this individual to tell this person that Frederick was disciplined, they would have to answer honestly yes. Why doesn't that defeat mootness? I beg your pardon? Why does that not defeat mootness? Why shouldn't he then have a chance to vindicate what he claims is his Alaska State constitutional right to have said what he said on the banner? Essentially what Mr. Frederick wants is a declaration that it was wrongful for the district to do this to him. Now, every student in every case of this nature wants that. I'm sure that the students in Doe, I'm sure the students in Cole, wanted something that in their records that said to anybody who asked, I had the right to make my sectarian speech or I had the right to listen to prayers. That's what they want. They want vindication. They want judicial vindication. The question is, what kind of order could be entered that would grant them that relief? If such an order could be granted, then Doe and Cole were not moot because they wanted judicial vindication also. Every person who was confronted with a mootness defense wants an advisory opinion. That doesn't mean that they're entitled to it. The question is, what is the meaningful relief that this court could give Mr. Frederick? Why couldn't the meaningful relief be an injunction that if upon the information being released, a school employee were asked whether Frederick was disciplined, the answer would be the school district has rescinded any discipline applied to Frederick and his status is not having been disciplined. I don't even know if they could do that. He served his discipline. That's the whole point of these mootness cases. Counsel, when you expunge a criminal conviction. I'm having great difficulty hearing you, Your Honor. When a criminal conviction is expunged, there's no longer any record of it anywhere, and it's as though it doesn't exist. And what if an employer calls the police officer and says to the police officer, did you arrest this person? Was this person convicted? The records are expunged. What does that police officer need to say? The order doesn't say, and thou shalt never, ever say one word about what's happened here. And this is highly hypothetical. But that's not what the orders say. The orders say thou shalt expunge, all right? And then thereafter, you still have to deal with human beings. But the most the court can do is order that those records be expunged. Unless you want some kind of perpetual gag order on people that they will not mention that something happened. It might not be a gag order. It might be the kind of thing that when people have an unpleasant departure from a company they work for, frequently they negotiate exactly what words will be used when somebody inquires about their departure. And a verbal formula is agreed upon between the parties. And it seems to me that an injunction could serve a purpose like that. An injunction could not wipe out the fact that discipline was imposed. It could not. And that's why these cases are moved. Because the student is not. But the words could also say that the words, the school district could be instructed to respond that any disciplinary action had been expunged. As it is, they do not have to report that. Isn't that right? They wouldn't report anything. They'd say that there are no records. And to say that it's been expunged would be worse, would it not? Thank you. If you need a minute or two more, go ahead. I'm here to answer your questions, Your Honor. Thank you, Counsel.  Oh, that's what I meant. If you needed a minute or two more to continue. All right. You're over time, but we're giving you extra time. All right. I guess, you know, this is a fascinating case. It's the kind of case that both lawyers and judges like to get their teeth into. But it is a fundamental precept of our judicial system that you don't make unnecessary constitutional determinations. This is, I mean, I haven't heard any questions about whether or not there are any federal claims remaining. I believe the Supreme Court's opinion is clear on that. With respect to the state law, there isn't any case that comes even close to this. The closest case is the Breese case that involved hair and involved privacy. There are no student First Amendment cases. Some, you know, this case may come up again. The merits of this case are not before the court. Judge Sedgwick's opinion, his first opinion, has been vacated. It will not stand as a matter of precedent. If this case comes up again or something similar to this case, hopefully it will come up on facts that make a little more sense and that aren't quite so ambiguous. And hopefully it will be tried from the outset in the state court system. But it will be a case of first impression. It's not one that the court should be straining to reach. Appreciate it. Thank you very much. Thank you, counsel. I would like to touch just on one other aspect of the arguments regarding mootness. The first is the argument is that it was mooted by the simple fact that Mr. Frederick graduated. When this Court heard this the first time in the summer of 2004, he'd already graduated two years previously. The argument was not made then. So I question whether one can keep that argument lying in the weeds. But we always have to consider our jurisdiction. I mean, even if it isn't raised by a party, we have to consider it. I understand. Had he graduated when the Supreme Court decided it on the merits? He had been graduated when the Supreme Court decided it. Open question whether it was on the merits. Yes. The argument there, again, was not raised before the Supreme Court, but either side. Well, you take up mootness sua sponte, as Judge Wardlaw just said, so. Correct. It doesn't matter that it wasn't raised. But the Supreme Court did. So maybe we should follow their precedent. I understand. I stand corrected, Your Honor. Well, I think that's all I have to say. Thank you, counsel. Well, our arguments are done, but if you have a correction, go ahead. The suggestion that the case was moot when the Supreme Court decided it. Since the federal liability issue had not been decided, everything was in play, including damages and expungement under the First Amendment. So the case was not moot when decided by the Supreme Court. That actually is a different argument. If Mr. Mertz wishes to respond, he may. Thank you, counsel. Frederick v. Morse is submitted and adjourned.
judges: Hall, Kleinfeld, Wardlaw